DeMOSS, Circuit Judge,
specially concurring and dissenting:
I concur fully with the rationale, reasoning and conclusion set forth in Part II of the panel opinion relating to the appropriateness of, and the enforceability of, the QTIP election made by Herbert in his capacity as independent executor of the estate of his first wife, Mary Jane. I also concur with the panel’s reasoning and analysis set forth in Part III, Life Insurance Proceeds, of the foregoing opinion, in so far as such opinion concludes: (i) that prior to her death, Mary Jane had a community property interest in the term life insurance policy which was taken out during her marriage to Herbert, which insured Herbert’s life and which was payable to “the estate of the insured”; and (ii) that, contrary to the contentions urged by the Commissioner, dissolution of the marital community between Herbert and Mary Jane did not automatically terminate Mary Jane’s interest in the policy; Mary Jane’s interest in the policy was not limited to one-half the cash surrender value or interpolated terminal reserve value thereof at her death; and the lack of monetary value in the policy at the moment of her death did not result in.an “extinguishment” of her interest.
I part company with my distinguished colleagues in concluding that the foregoing determinations were sufficient to demonstrate that the Tax Court erred in holding that Herbert’s estate should include 100% of the proceeds of the life insurance policy. I reach the contrary conclusion based on either or both of the following reasons:
(1) Section 2044 of the Internal Revenue Code mandates that a decedents estate must include the value of any property as to which a valid QTIP election under Section 2056(b)(7) was made; and
(2) Section 2042 of the Internal Revenue Codes mandates that a life insurance policy made payable to the estate of the decedent must be included in the gross estate of the decedent, and the requirements of Treasury Regulation Section 20.2042-l(b)(2) are not satisfied in this ease.
*606 I write now to set forth the supporting analysis for these reasons.
SECTION 2044 MANDATES INCLUSION OF QTIP PROPERTY
The community property interest which Mary Jane owned in the life insurance policy on Herbert’s life during their marriage was inheritable under the intestate succession statute of Texas or devisable under the terms of her will. Mary Jane did leave a will which was admitted to probate and Article V of that will is a true residuary disposition by which Mary Jane devised “all of the rest and residue of the property which I may own at the time of my death, whether real, personal or mixed, and wherever situated” to the trustee of the trust created under Article Y. Consequently, after Mary Jane’s death, the life insurance policy on Herbert’s life was owned 50% by Herbert as his separate estate and 50% by the trust created under Article V of her will. Under the terms of Mary Jane’s will, Herbert was a lifetime beneficiary of the trust created under Article V; and we have concluded in Part II of the panel opinion that Herbert had sufficient income rights in the property in Article V to make such property eligible for a QTIP election. In his capacity as independent executor, Herbert expressly elected to treat all of the assets passing under Mary Jane’s will, including expressly those passing under Article V, as being covered by the QTIP election and no estate taxes were due and owing therefore on Mary Jane’s estate. The basic concept of the marital deduction under Section 2056(a) in general and a QTIP election under Section 2056(b)(7) is a postponement of (an not an exemption from) estate taxes at the time of the death of the first spouse to die. Likewise, Congress intended by passage of Section 2044 that upon the death of the second spouse the gross estate of the second spouse “shall include the value of any property in which the decedent [the second spouse] had a qualifying income interest for life.” Note that the definition says that it is the value of the “property” not the value of the “qualifying income interest for life.” For example, suppose husband and wife owned as community property a piece of commercial property on which the improvements were subject to a long term lease to a national tenant. Wife dies leaving a will which devises her one-half interest in the property to a trust of which her husband is a beneficiary for his life for all of the income from the property and upon his death the trust continues for the benefit of their children. Upon the wife’s death a QTIP election is exercised as to this property and no portion of the value of that property is included for tax purposes in the wife’s estate. Upon the subsequent death of the husband, his gross estate must include the value of the wife’s interest in the property, not just the value of his lifetime revenue interest. Therefore, it seems clear to me that in the ease before us, the value of the life insurance on Herbert’s life (the property) as to which Herbert (the decedent) had a qualifying income interest for life as the beneficiary of the trust under Article V of Mary Jane’s will, must now be included in Herbert’s estate for tax purposes.
PROCEEDS OF LIFE INSURANCE UNDER SECTION 2042
It is stipulated in this case that the life insurance policy on Herbert’s life was payable to “the estate of the insured.” The express terms of Section 2042 therefore mandate that the proceeds of such policy are includable as part of the gross estate of Herbert’s estate. The only possible grounds upon which Herbert’s estate could avoid the inclusion of 100% of the insurance proceeds would be to demonstrate that the circumstances defined in Treasury Regulation Section 20.2042-l(b)(2) were applicable. This regulation states:
(2) If the proceeds of an insurance policy made payable to the decedent’s estate are community assets under the local community property law and, as a result, one-half of the proceeds belongs to the decedent’s spouse, then only one-half of the proceeds is considered to be receivable by or for the benefit decedent’s estate. (Emphasis added)
As the panel majority indicates in the first paragraph of Section III of their opinion, “Herbert’s estate labors to avail itself of this exception by insisting that one-half of the $650,000 proceeds still belong to Mary Jane’s *607 residuary trust.” The panel majority then proceeds to demonstrate (accurately in my opinion) why the grounds asserted by the Commissioner to defeat the position asserted by Herbert’s estate missed their mark and are not themselves sufficient to support the conclusion of the tax court that 100% of the insurance proceeds had to be included in Herbert’s estate. However, nowhere does the panel majority address the satisfaction of the requirements of the Treasury Regulation quoted above, and in my view on the basis of the record in this case, there is no way those requirements can be met.
First of all, there are serious definition problems which Herbert’s estate cannot satisfy. After the death of Mary Jane (which terminated the community estate between Herbert and Mary Jane) the life insurance policy was no longer a “community asset” but rather it was an asset of the tenancy in common between the separate estate of Herbert as to 50% and the trust created under Article V of Mary Jane’s will as to 50%. Note that the Regulation says “are community assets” not “were community assets.” Consequently, the proceeds of that policy when made payable by the occurrence of Herbert’s death were payable 50% to Herbert’s separate estate and 50% to the' trust under Article V of Mary Jane’s will. Satisfaction of the requirements of the Regulation is further complicated by the factual circumstance that Herbert had remarried and at the time of his death, his second wife, Cindy, was his “spouse.” There is nothing in the record whatsoever to demonstrate that Cindy ever acquired any interest from any source in the life insurance policy on Herbert’s life. Consequently, none of the policy proceeds belongs to “the decedent’s spouse.” I see nothing in the regulations which would permit us to construe the term “the decedent’s spouse” to mean “a trust created under the will of a former spouse.” Since the statute (Section 2042) mandates the inclusion in the decedent’s gross estate of “the amount receivable by the executor as insurance under policies on the life of the decedent,” the burden would be upon Herbert’s estate to demonstrate its entitlement to the exclusion contemplated by the Treasury Regulation; and since neither the facts nor the legal concepts permit that to be done, I think we are obligated to affirm the decision of the tax court requiring the inclusion of 100% of the life insurance proceeds even though we do not agree with the grounds or reasons upon which the tax court arrived at that conclusion.
Accordingly, I dissent from the conclusion of the panel majority requiring a recalculation of the tax liability “attributing [only] one-half of the proceeds of the insurance policy to Herbert’s estate.”